SO ORDERED.

Dated: December 21, 2022

*Daniel P. Collins*

Daniel P. Collins, Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF ARIZONA

| | | |
|---|---|---|
| In re | ) | Chapter 11 Proceedings |
| | ) | |
| THE JOHN V. GALLY FAMILY PROTECTIVE TRUST INC., | ) | Case No: 2:22-bk-05770-DPC |
| | ) | |
| | ) | **UNDER ADVISEMENT ORDER RE JUDGMENT CREDITOR'S MOTION TO DISMISS OR CONVERT** |
| Debtor. | ) | |
| | ) | |
| | ) | (Not for Publication – Electronic Docketing ONLY)[1] |

Before this Court is the Motion ("Motion to Dismiss")[2] of judgment creditor Green Cross Medical, Inc. ("Green Cross"). The John V. Gally Family Protective Trust Inc. ("Debtor") filed a Response ("Response")[3] to the Motion to Dismiss, and Green Cross filed its Reply ("Reply").[4] On November 22, 2022, the Court held a hearing on the Motion to Dismiss and took this matter under advisement. After considering the parties' briefs, oral arguments and case law concerning bankruptcies filed in lieu of posting a supersedeas bond while the debtor is appealing a pre-bankruptcy judgment against the debtor, this Court now issues this Order denying Green Cross's Motion to Dismiss.

---

[1] This decision sets forth the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. ("Rule") 7052.
[2] DE 60. "DE" references a docket entry in the bankruptcy case 2:22-bk-05770-DPC.
[3] DE 81.
[4] DE 85.

## I. BACKGROUND

Debtor claims to be a valid Arizona business trust[5] having been in the business of buying, improving, leasing, and selling commercial, residential, and vacant real property since 1993.[6] Debtor was originally established through the execution of a trust instrument in 1993 by trustor John V. Gally ("Mr. Gally").[7] Debtor purported to convert that trust to a business trust on August 18, 2022, just 12 days prior to filing this bankruptcy.[8] Co-trustee Caryn Mangisi ("Caryn") manages, maintains, and markets Debtor's real estate holdings, in consultation with her brother (and co-trustee) Mark Gally ("Mark") and other trust beneficiaries.[9] Caryn and Mark are children of the now-deceased Mr. Gally. When Debtor sells real estate, Debtor typically provides seller financing to its buyers.[10] Consequently, Debtor holds a substantial number of carryback promissory notes ("Notes").[11]

According to Debtor's Schedules and Statements, Debtor owns 18 properties in Iron County, Utah appraised at a total value of $388,200[12] and in Winslow, Arizona Debtor owns 7 residential properties (totaling $508,000), 7 commercial properties (totaling $773,000), and 7 vacant lots (totaling $305,400).[13] Debtor values its total real estate holdings at $1,974,600.[14] Debtor holds 24 Notes with aggregate outstanding balances of $2,667,370.81 plus interest rates ranging from 5% to 10%.[15]

---

[5] In a motion filed on November 18, 2022 (DE 88), Green Cross contends Debtor is not a valid business trust and this alone stands as grounds to dismiss this case. That motion set for hearing on December 22, 2022 at 10:00 AM is in no sense the subject of this Order.
[6] DE 81, page 3.
[7] DE 81, page 3.
[8] DE 81, page 3.
[9] DE 81, page 3.
[10] DE 81, page 3.
[11] DE 81, page 3.
[12] DE 18, Schedule A-1. All property appraisals listed in Debtor's Schedules were for tax purposes from February 2021.
[13] DE 18, Schedule A-2.
[14] DE 18, page 1. Debtor's Schedule A/B Assets (line 55.4) listed commercial properties in Winslow as $583,000, but the itemized listing in Schedule A-2 for Winslow commercial property reflects values totaling $773,000.
[15] DE 18, Schedule B-1.

In 2012, Green Cross brought a breach of contract action ("Green Cross Lawsuit") against Debtor in Arizona Superior Court, Navajo County ("State Court").[16] The Green Cross Lawsuit arose out of a dispute where Debtor's former attorney, Kathryne Ward, revoked Green Cross's lease to real property previously owned by Debtor located at 1600 East Second Street, Winslow, Arizona.[17] On July 5, 2022, the State Court awarded $3,565,000 in favor of Green Cross, plus attorney's fees and costs.[18] On July 25, 2022, Green Cross filed a motion seeking $123,764 in attorney's fees, $49,866.25 in expert witness fees, and pre-judgment interest of 5.75% accruing from April 15, 2019.[19] On August 29, 2022, Debtor responded to that motion, seeking to reduce the claimed fees and costs.[20] The next day, August 30, 2022 ("Petition Date"), and before the State Court entered its judgment against Debtor, this voluntary chapter 11 bankruptcy petition was filed by Debtor under Subchapter V.[21]

On October 18, 2022, this Court entered an Order Approving Stipulation to Relief from Automatic Stay to Continue State Court Litigation to allow further proceedings in State Court related to the entry of judgment and Debtor's likely appeal of the anticipated judgment.[22] Debtor believes it can either reverse the anticipated judgment entirely or substantially reduce it on appeal or through a new trial.[23]

Debtor's Schedules and Statements list no secured creditors and only three other general unsecured creditors whose claims total $6,309.[24] At this Court's November 22, 2022 hearing, the parties agreed the Court should authorize Debtor to pay the other three general unsecured creditors in full, making this literally a two-party dispute.[25]

---

[16] DE 60, page 1. The Green Cross Lawsuit is at Case No. CV201200208.
[17] DE 80, page 4.
[18] DE 60, page 1.
[19] DE 60, page 2.
[20] DE 60, page 2.
[21] DE 1.
[22] DE 78.
[23] DE 81, page 4.
[24] DE 1.
[25] DE 92.

**A. Green Cross's Motion to Dismiss**

Green Cross argues that cause exists under § 1112(b) to dismiss this case because Debtor filed this bankruptcy in bad faith.[26] More specifically, Green Cross argues that Debtor filed this case as a "litigation tactic to avoid filing a supersedeas bond" while it appeals the judgment which will ultimately be entered by the State Court.[27] Green Cross prefers dismissal to conversion.[28]

Green Cross relies on the bad faith factors which some courts analyze when a debtor files a bankruptcy seeking to avoid posting an appeal bond. Green Cross points to those factors discussed in *In re Mense* to conclude that Debtor filed its bankruptcy in bad faith.[29] Green Cross asserts Debtor is not a viable business, has no employees aside from its beneficiaries or family members, and never had financial problems prior to Green Cross's favorable award in State Court.[30] Notably, Debtor's original trust documents require the trust's assets to be distributed upon the death of Mr. Gally. He passed away almost two years ago.[31] Moreover, Debtor did not even attempt to obtain a supersedeas bond.[32] Green Cross argues that Debtor could have obtained a supersedeas bond at 50% of its net worth.[33] Green Cross approximates that Debtor could have obtained a $2.5 million supersedeas bond, significantly less than the $3.565 million judgment.[34] Green Cross argues that Debtor will not be able to file a confirmable plan because it will necessarily fail the best interests of creditor's test.[35]

Finally, Green Cross argues that this case should be dismissed because it is a two-party dispute that can be resolved by the State Court.[36] Green Cross asserts that, where

---

[26] DE 60, page 3.
[27] DE 60, page 5.
[28] DE 60, page 11.
[29] *In re Mense*, 509 B.R. 269, 279-81 (Bankr. C.D. Cal. 2014).
[30] DE 60, page 6.
[31] DE 60, page 2-3, 6.
[32] DE 60, page 6-7.
[33] DE 60, page 7.
[34] DE 60, page 7.
[35] DE 60, page 7-8.
[36] DE 60, page 9.

two parties can resolve their disputes outside of bankruptcy court, invocation of bankruptcy court jurisdiction is improper and, therefore, lacks good faith.[37] Accordingly, Green Cross argues there is no "legitimate reorganizational purpose" and the Court should dismiss this case as a bad-faith filing.[38]

### B. Debtor's Response

Debtor responds that its bankruptcy was filed in good faith and "with the intention and ability to consummate a prompt and efficient organization."[39] Debtor's main argument is that the Ninth Circuit Court of Appeals ("9th Circuit") and the 9th Circuit Bankruptcy Appellate Panel ("BAP") have never held that filing a bankruptcy case, instead of posting a supersedeas bond, is *ipso facto* bad faith for dismissal purposes under § 1112(b).[40] Rather, where a debtor intends for a "speedy, efficient reorganization," the case should not be dismissed.[41] As evidence of Debtor's intention to speedily and efficiently reorganize, Debtor submitted its draft Subchapter V Plan.[42] Debtor's purpose in filing bankruptcy was to prevent a substantial loss in asset value if Green Cross were to execute on a judgment and proceeded with sheriff's sales and garnishments of the Notes, all of which are property of their bankruptcy estate.[43]

Debtor rejects Green Cross's assertion that it filed this bankruptcy to avoid posting a supersedeas bond.[44] Rather, Debtor contends it did not have the means to post a supersedeas bond.[45] Using Green Cross's approximation of $2.5 million for posting a supersedeas bond, Debtor estimates it would not have been able to afford the bond because Debtor only had $167,391.94 cash on hand on the Petition Date, Debtor's Notes

---

[37] DE 60, page 9-10.
[38] DE 60, page 11.
[39] DE 81, page 1.
[40] DE 81, page 2.
[41] DE 81, page 2.
[42] DE 81. Exhibit A. Debtor eventually filed its Subchapter V Plan on 11/28/22. DE 91.
[43] DE 81, page 6.
[44] DE 81, page 2.
[45] DE 81, page 2.

would not be accepted as collateral by a bond issuer, and Debtor's real property (appraised at $1,787,600) would only be acceptable as collateral at a 50% appraisal value.[46] Thus, Debtor contends its bankruptcy filing was Debtor's only way to preserve its assets and orderly liquidate property of this estate if and when Green Cross's eventual judgment is not reduced or reversed on appeal.[47]

### C. Green Cross's Reply

In its Reply, Green Cross argues that Debtor failed to address the *Mense* factors and asserts Debtor's sole purpose in filing this bankruptcy was to hinder Green Cross from satisfying its judgment.[48] Debtor did not dispute, according to the trust document, that Debtor was to liquidate all its assets upon the death of Mr. Gally.[49] Additionally, although the 9th Circuit has not held that filing bankruptcy in lieu of posting a supersedeas bond is *ipso facto* bad faith, it is bad faith if the judgment can be paid with non-business assets.[50] Debtor's Schedules and Statements list assets valued collectively at almost $5 million, enough to satisfy Green Cross's judgment.[51] Because Debtor is required to liquidate and distribute all its assets (according to its trust documents) Green Cross maintains that Debtor's assets are non-business assets.[52] Furthermore, Debtor has no other creditors, no employees other than Caryn, and no investors or owners but only trust beneficiaries.[53] According to Green Cross, Debtor has no viable business to reorganize and cause for dismissal has been established pursuant to § 1112(b).

## II. JURISDICTION

This Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A).

---

[46] DE 81, page 7.
[47] DE 81, page 12-13.
[48] DE 85, page 1-2.
[49] DE 85, page 3. Mr. Gally died on February 15, 2021.
[50] DE 85, page 3.
[51] DE 85, page 3.
[52] DE 85, page 4.
[53] DE 85, page 4.

## III. ISSUE

Whether filing this bankruptcy case in lieu of posting a supersedeas bond in State Court, because Debtor did not have sufficient liquid assets or collateral to satisfy the judgment or post a supersedeas bond, constitutes bad faith and grounds for dismissal pursuant to § 1112(b).

## IV. THE LAW ON BANKRUPTCY FILINGS TO AVOID POSTING A SUPERSEDEAS BOND

Under § 1112(b), a chapter 11 petition may be dismissed for cause if the petition was not filed in good faith.[54] "A chapter 11 petition is not filed in good faith if it represents an attempt 'to unreasonably deter and harass creditors' and to 'achieve objectives outside the legitimate scope of the bankruptcy laws.'"[55] "The existence of good faith depends on an amalgam of factors and not upon a specific fact."[56]

The filing of a bankruptcy to avoid posting a supersedeas bond is not a new phenomenon. Famously, in 1987, Texaco filed bankruptcy about a year after a $10.5 billion judgment was entered against it.[57] Texaco could not post a supersedeas bond which, under Texas law at the time, would have been equal to the amount of the judgment.[58] Many bankruptcy courts addressing this issue have held that filing a bankruptcy petition instead of posting a supersedeas bond is a litigation tactic and constitutes cause for dismissal.[59] Yet "[s]everal bankruptcy courts have held that a debtor may use a chapter 11 petition to avoid posting an appeal bond if satisfaction of the judgment would severely disrupt the debtor's business."[60]

---

[54] *Marsch v. Marsch* (*In re Marsch*), 36 F.3d 825, 828 (9th Cir. 1994) (per curiam).
[55] *In re Hanna*, 2018 WL 1770960, at *3 (B.A.P. 9th Cir. Apr. 13, 2018) (citing *In re Marshall*, 721 F.3d 1032, 1047 (9th Cir. 2013) and *Marsch*, 36 F.3d at 828).
[56] *In re Arnold*, 806 F.2d 937, 939 (9th Cir. 1986).
[57] See *Texaco, Inc. v. Pennzoil, Co.*, 784 F.2d 1133 (2d Cir. 1986).
[58] See *Texaco, Inc. v. Pennzoil, Co.*, 729 S.W.2d 768 (Tex. App. 1987), *cert. dismissed*, 485 U.S. 994 (1987).
[59] See e.g., *In re Wally Findlay Galleries (New York), Inc.*, 36 B.R. 849, 851 (Bankr. S.D.N.Y. 1984) ("This court should not, and will not, act as a substitute for a supersedeas bond of state court proceedings.")
[60] *Marsch*, 36 F.3d at 829; *see also In re Hyatt*, 479 B.R. 880 (Bankr. D.N.M 2012) (holding that a bankruptcy, involving a largely two-party dispute, filed to avoid a supersedeas bond was not a bad faith filing because the debtor could not afford to post a supersedeas bond).

The 9th Circuit has twice addressed the issue of whether the filing of a bankruptcy to avoid posting a supersedeas bond is "bad faith" for dismissal purposes under § 1112(b). In *Marsch*, the 9th Circuit held that the filing of a bankruptcy to avoid paying a supersedeas bond is cause for dismissal under § 1112(b) when the debtor has sufficient non-business assets to satisfy the judgment.[61] In addressing the specific issue of whether filing bankruptcy in lieu of posting a supersedeas bond constitutes bad faith, the 9th Circuit stated "[w]e need not decide whether bankruptcy laws can be used to skirt state court procedural rules in this manner."[62] The 9th Circuit determined that a debtor filing a chapter 11 petition because "enforcement of a judgment would cause severe business disruption" is "a question we leave open."[63]

The next time the 9th Circuit addressed the issue was in 2013. In *Marshall*,[64] the debtors argued the "sole purpose in filing the petition was to avoid filing a supersedeas bond pending appeal of the [judgment]."[65] The 9th Circuit cited to its previous decision in *Marsch*, but distinguished one key fact—the debtor's liquid assets "were probably insufficient to satisfy the judgment or cover the cost of a supersedeas bond."[66] Moreover, the debtors accounted for the judgment in their initial chapter 11 plan, suggesting the debtor's bankruptcy served a proper reorganizational purpose and was not "a mere ploy to avoid posting the bond."[67] The 9th Circuit reasoned that "all debtors file for bankruptcy in order to delay creditor action.… [A]lthough the Debtors' main motivation may have been to ameliorate the burden of the judgment… we cannot say that they filed a Chapter 11 petition in order to avoid paying it altogether, or to unduly deter or harass creditors."

---

[61] *Marsch,* 36 F.3d at 829.
[62] *Id.*
[63] *Id.*; *see also Mense*, 509 B.R. at 279 ("The Ninth Circuit has yet to decide the specific issue of whether a debtor, who seeks to appeal an adverse state court judgment, can file a chapter 11 petition and use the automatic stay to trump state law requirements for an appeal bond.")
[64] *Marshall*, 721 F.3d 1032.
[65] *Id.* at 1048.
[66] *Id.*
[67] *Id.*

The 9th Circuit also agreed with the Bankruptcy Court that the most compelling grounds to deny dismissal is when a "reorganizational plan qualifies for confirmation" because "a debtor's showing that a plan of reorganization is ready for confirmation essentially refutes a contention that the case is filed or prosecuted in bad faith."[68]

The 9th Circuit BAP addressed the "bankruptcy in lieu of supersedeas bond" issue in 2018. In *Hanna*,[69] the debtors filed their chapter 11 bankruptcy after entry of an adverse state court judgment of roughly $300,000.[70] The judgment creditor filed a motion to dismiss the bankruptcy case "as a bad faith filing" because the debtors were "solvent at the time of the filing; they had few unsecured creditors; and [the debtor] admitted … that the Judgment and the [debtors'] inability to obtain a supersedeas bond was what led them to file for bankruptcy."[71] The judgment creditor argued that the debtor "had the ability to obtain a bond based on their net worth" of roughly $380,000.[72] The judgment creditor argued that the debtors used the chapter 11 as a "free stay and as a litigation tactic to delay paying the Judgment."[73]

The issue of whether the debtors could have obtained a bond was "hotly contested."[74] But ultimately, the bankruptcy court held, and the 9th Circuit BAP agreed, that "filing a bankruptcy petition in lieu of posting an appeal bond" is not "*ipso facto* bad faith for purposes of dismissal under § 1112(b)."[75] Rather, it is only a single factor in an "amalgam of factors" that a bankruptcy court can consider in making a determination of bad faith.[76] The BAP noted that the debtors attempted to "effect a speedy, efficient reorganization on a feasible basis…the goal of orderly payment of creditors is one of the

---

[68] *Id.* at 1049 (citing the Bankruptcy Court).
[69] *Hanna*, 2018 WL 1770960.
[70] *Id.* at *2.
[71] *Id.* at *3.
[72] *Id.*
[73] *Id.*
[74] *Id.* at *5.
[75] *Id.*
[76] *Id.*

legitimate reasons to file bankruptcy," and the debtors seeking relief from the stay so the debtors and judgment creditor could both proceed with the appeal evinces a lack of intent "to stall or delay."[77] In finding that the petition was not filed to unreasonably delay or harass creditors, the BAP pointed out "it was filed so that their creditors could be paid in an orderly fashion and without sacrificing equity."[78] Finally, the most compelling fact that the BAP relied on was the fact that the debtors had filed a reorganization plan that qualified for confirmation.[79]

In *Mense*, a Bankruptcy Court in the Central District of California enumerated seven factors that other courts have considered when looking into the specific issue of a bankruptcy filing in lieu of posting a supersedeas bond:

1. Whether the debtor is a viable business which would suffer severe disruption if enforcement of the judgment was not stayed; and the chapter 11 petition was filed to preserve its status as an ongoing concern and to protects its employees and creditors;
2. Whether the debtor has financial problems on the petition date, other than the adverse judgment;
3. Whether the debtor has relatively few unsecured creditors, other that the holder of the adverse judgment;
4. Whether the debtor has sufficient assets to post a bond to stay the judgment pending appeal;
5. Whether the debtor acted in good faith to exhaust all efforts to obtain a bond to stay the judgment pending appeal;
6. Whether the debtor intends to pursue an effective reorganization within a reasonable period of time, or whether the debtor is unwilling or unable to propose a meaningful plan until the conclusion of the litigation; and
7. Whether assets of the estate are being diminished by the combined ongoing expenses of the debtor, the chapter 11 proceedings, and prosecution of the appeal.[80]

*Mense* was a jointly administered bankruptcy of the debtors Cottonsmith LLC ("Cottonsmith") and its 90% owner Raphael Mense ("Mense").[81] In finding that

---

[77] *Id.* at *5-6.
[78] *Id.* at *6.
[79] *Id.* at *6.
[80] *Mense*, 509 B.R. at 280-81.
[81] *Id.* at 273.

Cottonsmith filed its bankruptcy case in bad faith, the court pointed out that the debtor ceased business operations, liquidated all its assets three years prior to bankruptcy, and only had a dwindling bank account of approximately $1.1 million as its last asset.[82] Accordingly, bankruptcy protection was improper because "there is no going concern to preserve, there are no employees to protect, and there is no hope of rehabilitation …."[83]

The court also found that Mense did not need chapter 11 relief to protect a viable business because he was solvent with a net worth of approximately $13.4 million.[84] Mense estimated the appeal bond to cost around $6.8 million.[85] Furthermore, Cottonsmith and Mense filed for bankruptcy six months after the adverse jury verdict and neither Cottonsmith nor Mense provided evidence demonstrating an effort to obtain an appeal bond.[86] The court found that the debtors "do not intend to propose a meaningful plan or to liquidate any of Mense's real property interests pending the outcome of the appeal.[87] The court concluded that "Mense has over $4 million in cash, but is unwilling to borrow against his real estate investments or to liquidate any portion of his real estate holdings to provide the additional cash necessary to obtain an appeal bond."[88] The court also pointed out that Mense was on a fixed monthly income of $1,698, his non-filing spouse earned $6,000 per month, but their monthly expenses exceed $26,000.[89] The Mense court dismissed these bankruptcies as bad faith filings under § 1112(b).

Finally, "[p]etitions in bankruptcy arising out of a two-party dispute do not per se constitute a bad-faith filing."[90] This is another factor in an amalgam of factors that courts weigh in determining whether to dismiss a case as a bad-faith filing.

---

[82] *Id.* at 281.
[83] *Id.* (citing *Little Creek Dev. Co. v. Commonwealth Mortgage Corp.* (*Matter of Little Creek Dev. Co.*), 779 F.2d 1068, 1073 (5th Cir. 1986)).
[84] *Id.* at 282.
[85] *Id.*
[86] *Id.*
[87] *Id.* at 283.
[88] *Id.*
[89] *Id.* at 274.
[90] *In re Stolrow's Inc.,* 84 B.R. 167, 171 (9th Cir. B.A.P. 1988).

## V. ANALYSIS

This Court is tasked with a fact-specific inquiry to determine whether the Debtor's Subchapter V chapter 11 case was filed in bad faith. The facts here are largely undisputed even if the interpretations of those facts are hotly contested. This Court concludes that Debtor has demonstrated the filing of this bankruptcy was not in bad faith and not an attempt to unreasonably deter and harass creditors. Rather, the filing of this bankruptcy case comports with legitimate objectives achievable through bankruptcy laws.

First, the case law makes clear that the 9th Circuit has never held that filing a bankruptcy case in lieu of posting a supersedeas bond is *ipso facto* bad faith.[91] In that same vein, two-party disputes are not per se bad faith filings. Thus, even if Debtor did file this bankruptcy case in lieu of posting a supersedeas bond, this Court must consider the amalgam of other factors to determine whether bad faith is present. The seven factors enumerated in *Mense* are instructive but not binding on this Court.

Here, the facts do not suggest this bankruptcy case was filed in bad faith. The Debtor would likely not have been able to obtain a supersedeas bond given the difficulty of collateralizing the Notes receivable and persuading a bond issuer to accept the Debtor's real property as collateral at anything short of a very deep discount. Assuming Debtor's cost to obtain a supersedeas bond would have been $2.5 million, Debtor does not have sufficient liquid assets or other assets to collateralize the supersedeas bond. On the Petition Date, Debtor had $167,391.94 is its bank accounts,[92] $1,974,600 in real estate holdings,[93] and $2,667,370.81 in amounts owed under the Notes, among other smaller assets.[94] Like in *Marshall*, Debtor's liquid assets here are "probably insufficient" to post a supersedeas bond or satisfy Green Cross's anticipated judgment at fire sale prices. It is unclear whether a bond issuer would accept the Notes as collateral (and, if so, at what

---

[91] *Hanna*, 2018 WL 1770960, at *5.
[92] DE 18, page 3.
[93] DE 18, page 1
[94] DE 18, Schedule B-1.

valuation), but this Court need not make such a finding to resolve the issue of whether bad faith is present because, as the 9th Circuit BAP in *Hanna* concluded, the ability to obtain a supersedeas bond is only one factor in an amalgam of factors. This Court does, however, find that Debtor's liquid assets combined with the allowable collateral value of Debtor's other assets were likely insufficient to support posting of a supersedeas bond.

In contrast to Green Cross's contentions, this Court is persuaded that Debtor has filed this case with a proper bankruptcy purpose. The purpose of preserving asset values and orderly liquidating those assets to pay creditors is a proper bankruptcy purpose. Debtor has continued to sell its real estate in an orderly fashion at fair market values. Debtor has continued to sequester proceeds of the Notes and sales of real estate while paying relatively nominal salary and expenses to Caryn. Accordingly, Debtor is attempting to satisfy the anticipated State Court judgment in an orderly manner without sacrificing equity. The 9th Circuit BAP, in *Hanna*, explicitly stated that such a goal is a legitimate purpose to file bankruptcy.

Furthermore, Debtor appears to be expeditiously prosecuting an appeal of the anticipated State Court judgment. Debtor and Green Cross stipulated to terminate the stay with respect to the Green Cross Lawsuit to allow proceedings to continue in State Court. Like the debtors in *Hanna*, the Debtor and Green Cross sought relief from the automatic stay to prosecute and defend Debtor's likely appeal of the anticipated State Court judgment. This suggests the filing of this bankruptcy case was not intended to delay or harass Green Cross. Rather, Debtor is attempting to resolve its dispute with Green Cross while simultaneously proposing a procedure to repay Green Cross in an orderly fashion for the benefit of both parties.

Moreover, there has been no suggestion that Caryn and Mark are not to be trusted with the care, maintenance, sales, and cash preservation for this bankruptcy estate. Debtor has timely filed its Schedules and Statements, Statement of Financial Affairs, and

Monthly Operating Reports. Debtor met with the U.S. Trustee's office. Debtor appeared at the § 341 first meeting of creditors held on October 4, 2022. So far, Debtor has been transparent with its cash receipts and expenditures. After all real estate sales, Debtor files a notice of the proposed sale, outlining the property to be sold and the terms of the sale. The Subchapter V Trustee and Green Cross then review the proposed sale and give their comments or objections. If the parties cannot resolve the objections, a hearing is held, and this Court can either grant or deny the proposed sale. This Court has approved this sale procedure and it allows for transparency and an opportunity for Green Cross to be heard.

Finally, Debtor has evinced an intent to speedily and efficiently confirm a feasible plan by filing a plan of reorganization within 90 days of the Petition Date. Prior courts have held this factor weighs heavily against dismissal.[95] Like in *Hanna*, where the debtors submitted a plan that includes for the payment of the judgment, the Debtor here has included the payment of Green Cross's expected judgment in quarterly installments with the full principal amount due on the fifth anniversary of the Effective Date. The 9th Circuit, in *Marshall*, stated that a fact such as this suggests a proper reorganizational purpose exists and is not merely a bankruptcy case filed as a ploy to avoid posting a supersedeas bond. Moreover, the plan also states that if Green Cross's final non-appealable judgment equals or exceeds the current pending judgment, Debtor will transfer all its assets to Green Cross.[96] If the final non-appealable judgment is less than the pending judgment, Debtor will continue to make quarterly payments to Green Cross and, if the judgment is unsatisfied by the end of the five-year plan (and today that prospect seems unlikely), then Green Cross can pursue all legal remedies available to it.[97]

---

[95] *See e.g., Marshall*, 721 F.3d at 1048.
[96] DE 91, page 12.
[97] DE 91, page 12.

14

Notably absent from this Order, however, are two issues not explicitly urged by the parties' pleadings: (1) whether the creation of Debtor as a business trust, when it was originally a garden-variety estate planning vehicle, violates the trustor's intent and the original trust document and, if so, is that itself a factor for the Court to consider in whether this case was filed in bad faith;[98] and (2) whether "new debtor syndrome" is a factor to be considered in the determination of good faith.[99] The second motion to dismiss filed by Green Cross[100] implicates these issues and this Court should, and will, consider them when addressing the second motion to dismiss.

## VI. CONCLUSION

For the reasons states above, this Court concludes Debtor's Subchapter V chapter 11 bankruptcy case was not filed in bad faith. Green Cross's Motion to Dismiss is hereby denied.

**ORDERED
DATED AND SIGNED ABOVE.**

---

[98] The Court sees this as a possible governance issue that could cast a shadow on Caryn and Mark's decision to create a business trust so it could file bankruptcy where it was clear the original trust could not file a bankruptcy.

[99] New debtor syndrome is a factor that courts have considered in § 1112(b) dismissals for bad faith. *See e.g., In re Thirtieth Place, Inc.*, 30 B.R. 503, 505-06 (9th Cir. B.A.P. 1983). New debtor syndrome is implicated when an entity is created on the eve of bankruptcy and may be an improper attempt to abuse the bankruptcy laws' protections. *In re Lotus Investments, Inc.,* 16 B.R. 592, 595 (Bankr. S.D. Fla. 1981) ("bankruptcy courts should preserve their jurisdictional integrity by refusing to allow entities not eligible for bankruptcy relief to obtain relief by a transformation which lacks any legitimate business purpose.")

[100] DE 88.

| | |
|---|---|
| 1 | **To be Noticed through the BNC to:**<br>Interested Parties |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |